IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BERNARDO ABAN TERCERO, | |
| Petitioner, | |
| | No. 4:06-cv-3384 |
| VS. | |
| RICK THALER, Director, Texas Department of Criminal Justice, Institutional Division | DEATH PENALTY CASE |
| Respondent | |

SECOND AMENDED PETITION FOR HABEAS CORPUS
BY A PERSON IN STATE CUSTODY

COMES NOW Bernardo Aban Tercero, Petitioner in the above captioned cause and pursuant to 28 U.S.C. § 2254 submits to this Court his Second Amended Petition for Habeas Corpus, as follows:

**PROCEDURAL BACKGROUND**

On October 16, 2000 the Petitioner was convicted of the offense of capital murder in 232nd District Court of Harris County, Texas for the murder of Robert Berger during the course of a robbery of Park Avenue Cleaners, in Houston, Texas.

On October 20, 2000 the jury answered "Yes" to Special Issue No. 1 and "No" to

Special Issue No. 2 and the Court imposed a sentence of death on the Petitioner.

On November 20, 2000 counsel for the Petitioner filed a Motion for New Trial based upon prosecutorial misconduct and after hearing the trial court denied the motion on December 18, 2000.

The Petitioner timely appealed his conviction to the Court of Criminal Appeals and on September 18, 2002 in an unpublished opinion the Court of Criminal Appeals denied the Petitioner's appeal. *State v. Tercero*, No.73621 (2002).

On May 12, 2002, pursuant to Article 11.071 of the Texas Code of Criminal Procedure, Dick Wheelan, counsel for the Petitioner filed a petition for post conviction relief in the trial court and on July 11, 2002 the State filed its response.

On November 29, 2004 the Petitioner filed a *pro se* "Applicant's Motion to Amend Petition for State Habeas Corpus," which raised claims not included in the petition for habeas corpus filed by Mr. Wheelan, and on June 2nd 2005 the Petitioner filed a Motion for the Appointment of New 11.071 State Habeas Counsel, which was denied on June 7, 2005.

After requesting that the parties submit proposed findings of fact and conclusions of law, the trial court denied the petition and on November 16, 2005 in an unpublished opinion the Court of Criminal Appeals affirmed the denial of the petition for habeas corpus. The Court also dismissed the Petitioner's motion to amend his petition as a

successor petition which did not meet one of the exceptions provided for in Section 5 of Article 11.071. *Ex Parte Bernardo Aban Tercero*, No. WR-62,593-01 and WR-62,593-02 (2005).

Undersigned counsel were appointed on February 1, 2006.

On October 26, 2006 the Petitioner filed a *pro se* Petition for Habeas Corpus in this Court, setting forth four grounds for relief D.C. Doc. No. 1.

On November 10, 2006 undersigned counsel filed an Amended Petition for Habeas Corpus, which incorporated with amendments the claims filed by the Petitioner in his initial Petition, as well as additional claims. D.C. Doc. No. 6.

One of the additional claims in the Amended Petition, Amended Claim Four set forth facts which established that the Petitioner was under the age of 18 years at the time he allegedly committed the offense of which he was convicted and was there exempt from execution pursuant to the decision of the United States Supreme Court in *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183 (2005).

On June 22, 2007 the Respondent filed its Answer, D.C. Doc. No. 19, and on January 8, 2008 the Petitioner filed his Reply to the State's Answer. D.C. Doc. No. 31.

On March 31, 2008 this Court issued an Order staying and administratively closing the instant case in order for the Petitioner to return to state court to exhaust his *Simmons* claim. D.C. Doc. No. 32.

On May 5, 2008 the Petitioner filed a Successor Application for Writ of Habeas Corpus in the 232nd Judicial District Court of Harris County, Texas, setting for the facts that establish his *Simmons* claim.

The District Court forwarded the successor writ to the Court of Criminal Appeals, and on October 28, 2008 the Court of Criminal Appeals issued an Order granting successor status to the Petitioner's application and remanding the case to the district court for further proceedings. *Ex Parte Tercero*, No. 62,593-03 (Tex. Crim. App. October 28, 2008) (unpublished).

Notwithstanding the fact that the Petitioner requested an evidentiary hearing in state court on the issue of his *Simmons* claim, on August 7, 2009 the district court issued an order directing the parties to prepare and submit proposed findings of fact and conclusions of law.

On November 13, 2009, without holding an evidentiary hearing or addressing any of the evidence and affidavits presented by the Petitioner, the trial court accepted verbatim and signed the prosecution's 7 page proposed findings of fact and conclusions of law.

On March 3, 2010 the Court of Criminal Appeals issued and order adopting the trial court's findings of fact and conclusions of law and denying the Petitioner's application for habeas corpus. *Ex Parte Tercero*, No. WR-62,593-03 (Tex. Crim. App.

March 3, 2010) (unpublished).

On March 8, 2010 Counsel for the Petitioner filed a Motion to Reopen case , D.C. Doc. No. 33, which the Court granted on March 9, 2010, D.C. Doc. No. 35, and on April 12, 2010 the Court issued a Scheduling Order setting deadlines for the filing of the Petitioner's second amended petition for habeas corpus. D.C. Doc. No. 39.

On April 26, 2010 the Petitioner filed a "Motion for Evidentiary Hearing and for Appointment of Counsel" and supporting exhibits requesting *inter alia* that the Court set this cause for an evidentiary hearing and that new counsel be appointed. D.C. Doc. No. 40.

On April 30, 2010 undersigned counsel responded to the Petitioner's motion, D.C. Doc. No. 41, and on May 17, 2010 this Court issued an Order denying the Petitioner's motion without prejudice. D.C. Doc. No. 42.

**STATEMENT OF FACTS**

The following description of the offense was set forth by the Court of Criminal Appeals in its unpublished opinion denying the Petitioner's appeal:

> On March 31, 1997, Robert Berger and his young daughter entered the Park Avenue Cleaners near closing time. At about the same time, Ricardo Toruno unlocked the back door of the cleaners to take the trash out to the dumpster. On Toruno's way back inside, one of appellant's

accomplices put a gun to Toruno's head and accompanied him through the door. Appellant then entered the cleaners and proceeded to the front of the store. Michelle Johnson, the manager of the cleaners, testified that appellant said something to Berger, but that Berger did not respond. Appellant grabbed Berger by the arm and pushed him back. Berger attempted to get away from appellant, but appellant shot him in the back of the head, and he fell to the ground. At some point, one of the robbers demanded money. Thereafter, appellant and his co-defendant, each carrying a cash drawer, fled through the backdoor of the cleaners.

Appellant testified that be and Marisol Lima lived together. When they began having economic difficulties, Marisol told appellant that he could easily get money from the dry cleaners where she and her sister both worked. Appellant and Marisol's sister, Idalia, met and discussed how to commit such a robbery. Appellant and the two women "cased" the dry cleaners the day before the robbery and devised a pager code so Idalia could page appellant and his accomplice when there were no customers in the shop. He testified that when he pulled out his gun in the dry cleaners, waved it in the air, and asked for money, Mr. Berger began advancing on him. The two began struggling and "the gun went off."

*State v. Tercero*, *supra* at 2-3.

After the offense, the Petitioner, a Nicaraguan national, briefly stayed with an acquaintance and then returned to Nicaragua.

On November 20, 1997 the Petitioner was indicted for the offense of capital murder.

As a result of the request of a female acquaintance who was paid by State and federal law enforcement for her efforts, in July of 1999 the Petitioner was arrested in Mexico while attempting to return to the United States.

Despite the fact that the Petitioner specifically requested to speak with the Nicaraguan Consulate and the authorities had full knowledge of the Petitioner's status as a foreign national, they denied him his right under the Vienna Convention of Consular Relations (hereinafter VCCR) and removed him to Harris County, Texas.

On August 4, 1999 Gilbert Villarreal was appointed as trial counsel for the Petitioner and John Denninger was appointed as second chair co-counsel. Counsel for the Petitioner filed no motions requesting funding or expert assistance until February 7, 2000, at which time he filed a request for an investigator and a "forensic expert." No motions were filed requesting a mitigation investigator or any other experts that would assist in conducting a background investigation and/or preparing a social history of the Petitioner. Counsel for the Petitioner made no records requests for any of the Petitioner's school or medical records, nor did he contact the Nicaraguan Consulate for any assistance until March 27, 2000, almost eight months after his appointment.

Similarly, counsel for the Petitioner made no attempts whatsoever to interview witnesses other than family and friends or secure funds for the purpose of conducting a

mitigation investigation in Nicaragua until approximately September 25, 2000, two weeks before the commencement of trial and after the jury was chosen and seated.

Despite the fact that counsel was provided with $21,670.00 by the trial court, the only funds that were expended were for a trip by counsel to Nicaragua two weeks before the trial commenced and for transportation and lodging for some of the Petitioner's family members and acquaintances to testify at the punishment phase of the trial. Rather than use the entirety of the funds provided by the court to have a knowledgeable professional assist in obtaining records and conducting a background and mitigation investigation in Nicaragua, counsel instead refunded $8,449.42 of the allocated funds to Harris County.

Further, although the trial court approved Petitioner's counsel's request for a forensic psychologist in February of 2000, counsel did not attempt to contact a psychologist until September 29, 2000, less than two weeks before the Petitioner's trial was set to begin. No psychological testing was ever done, nor was any psychological or other expert evidence, records, or testimony offered at trial.

Jury selection began on September 11, 2000 and concluded on September 25, 2000. On October 9, 2000 the Petitioner's motion to suppress a photo ID conducted by law enforcement was heard and denied and the trial began on October 10, 2000.

The State called 17 witnesses in its case in chief. One of the witnesses who testified for the State was Idalia Lima, who worked at the store the Petitioner was accused

of robbing and who provided him with details of the premises. Her testimony was key regarding the issue of the Petitioner's intent to kill during the robbery.

Counsel for the Petitioner called no witnesses other than the Petitioner, who testified *inter alia* that although he was present and committed the robbery of the cleaners, he did not intend to kill the victim and the death resulted from a struggle over the gun that the Petitioner was holding at the time of the incident.

On October 16, 2000 the jury returned a verdict finding the Petitioner guilty of capital murder as charged in the indictment.

On October 16-17, 2000 the court held an identification hearing regarding a crime victim's identification of the Petitioner in an alleged Nicaragua offense and denied Petitioner's counsel's motion to suppress the identification. The punishment phase of the Petitioner's trial began on October 17, 2000.

The State called six witnesses in its punishment case, most of whom were from Nicaragua and who testified about offenses of robbery and aggravated kidnapping that the Petitioner allegedly committed after he left Texas and returned to Nicaragua. The State offered no evidence that would have indicated that the Petitioner would commit acts of violence or be a danger in a prison environment if we were to receive a life sentence.

The defense called eleven witnesses, two of whom were law enforcement officers that testified about the circumstances of the Petitioner's apprehension and incarceration in

Harris County. Testimony was offered that although the Petitioner was housed in a "high risk" cell block in the Harris County Detention Center, aside from a minor disciplinary writeup for placing a newspaper over his cell window, he had no disciplinary writeups for aggressive of violent behavior.

The remainder of the witnesses were friends and relatives from Nicaragua who testified about the Petitioner's childhood and his efforts to save lives during hurricane Mitch.

In rebuttal the state called Melinda Winn Berger, wife of the victim, as a "victim impact" witness.

On October 20, 2000 the jury returned a verdict, answering Special Issue No. 1 "Yes" and Special issue No. 2 "No," and the Court imposed a sentence of death upon the Petitioner.

As a result of information obtained by Petitioner's counsel's investigator, on November 20, 2000 counsel filed a Motion for new Trial, alleging prosecutorial misconduct based upon statements obtained from Idalia Lima that alleged the prosecutor and law enforcement had told her not to disclose in her testimony that she had seen the Petitioner struggling with the victim and that she had spoken with him on the day after the offense was committed and he disclosed to her that he had not intended to kill anyone.

At the direction of the Court, Mr. Villarreal did not conduct the hearing. Instead, the case was assigned to James Sidney Crowley, Tex. Bar No. 05170200, who the Court had appointed to represent the Petitioner in the appeal of his conviction to the Court of Criminal Appeals.

On December 18, 2000 the Court held a hearing on the Petitioner's motion for a new trial and after hearing testimony from witnesses on both sides, the Court denied the Petitioner's motion.

Although he had personally conducted the hearing on the Petitioner's motion for a new trial, when he filed his appellate brief in the Court of Criminal Appeals Mr. Crowley neglected to include the denial of the motion for new trial and the concomitant Brady and prosecutorial misconduct claims in his brief on appeal.

In his brief on appeal of the Petitioner's conviction Mr. Crowley raised six points of error:

1. The trial court reversibly erred in granting the state's challenge for cause to venireperson Abel Salazar;

2. The trial court reversibly erred in refusing to instruct the jury on the lesser included offense of manslaughter;

3. The evidence is insufficient to support the jury's affirmative answer to the first special issue on punishment;

4. The trial court reversibly erred in overruling Appellant's motion to suppress the in court identification of witness Jose Arauna;

    5.    The prosecutor committed reversible error when he referred to Appellant as a "demon" during argument at the punishment phase;

    6.    The prosecutor committed reversible error when he referred to Appellant as a "beast" during argument at the punishment phase

As was noted above, although Mr. Crowley conducted the hearing on the Petitioner's motion for a new trial, he failed to include the denial of the motion as one of the claims of error in his brief on appeal. Similarly, Mr. Crowley did not include the denial of the motion to suppress the photo identification of the Petitioner that was filed by Petitioner's trial counsel.

On September 18, 2002 in an unpublished opinion the Court of Criminal Appeals denied the Petitioner's appeal. *State v. Tercero*, No.73621 (2002).

After Mr. Crowley was appointed to handle the Petitioner's appeal of his conviction, pursuant to Tex, Code Crim. Proc. Art. 11.071, Dick Wheelan, Tex. Bar No. 21252600, was appointed to represent the Petitioner for the purpose of investigating the Petitioner's case and preparing a writ of habeas corpus to be filed in state court.

Mr. Wheelan did no investigation of any of the facts of the Petitioner's case, failed even to attempt to interview jurors, trial counsel, or any of the witnesses or potential witnesses involved in the Petitioner's case. He failed further to investigate the violation of the Petitioner's rights by the prosecution in forcing Idalia Lima to testify in a manner different from what she actually saw and knew. He also failed even to attempt to secure

any records pertaining to the Petitioner's background, including birth records, school records and medical records.

Mr. Wheelan also failed to request funds to investigate the Petitioner's mental status or his social history in Nicaragua, which may have been significant in light of testimony presented at the punishment phase of the trial that indicated the Petitioner worked in the fields as a child, thus raising the possibility of pesticide exposure.

On May 22, 2002 Mr. Wheelan filed a Petition for Postconviction Relief in the 232nd Judicial District Court setting forth five claims for relief:

> 1. Applicant is entitled to relief in that the trial court violated applicant's due process rights under the Fourteenth Amendment to the United States Constitution by admitting irrelevant and prejudicial victim impact and victim worth evidence at the penalty phase of the trial;
>
> 2. Applicant is entitled to relief in that the trial court violated applicant's rights under the Eighth and Fourteenth Amendments to the United States Constitution by admitting irrelevant and prejudicial victim impact and victim character evidence at the guilt-innocence phase of the trial;
>
> 3. Applicant is entitled to relief in that his right to due process under the Fourteenth Amendment to the Constitution of the United States was violated in that the fact used to increase the maximum penalty for his crime was not charged in the indictment;
>
> 4. Applicant is entitled to relief in that trial counsel was constitutionally ineffective under the Sixth and Fourteenth amendments to the United States Constitution by failing to object to irrelevant, prejudicial victim character evidence during the guilt-innocence phase of his trial and by failing to object on due process grounds to irrelevant, excessive and prejudicial victim impact and victim character evidence during the penalty phase of his trial;

5.  Applicant is entitled to relief in that the "12-10 rule" of Article 37.071, V.A.C.C.P., which requires at least ten "no" votes for the jury to return a negative answer to the first or second special issues and at least ten "yes" votes for the jury to return an affirmative answer to the third special issue, violates the Eighth Amendment of the United States Constitution.

None of the aforesaid claims are based upon any evidence or the result of any investigation that occurred outside of the Clerk's Record and trial transcript in the Petitioner's case, thus indicating that Mr. Wheelan did virtually nothing to investigate the facts pertaining to the actions of trial and appellate counsel, potential mitigation, and potential prosecutorial misconduct and withholding of evidence.

On November 29, 2004 the Petitioner attempted to file a Motion to Amend Petition for State Habeas Corpus in the district court.

On December 1, 2004 the State filed its Proposed Findings of fact and Conclusions of Law in the district court.

On December 13, 2004 Mr. Wheelan filed the Petitioner's Proposed Findings of Fact and Conclusions of Law in state district court. The findings of fact occupied **less than three pages of text** and the Conclusions of Law occupied **less than two full pages of text.**

On June 2, 2005 the Petitioner filed a Motion for the Appointment of New 11.071 State Habeas Counsel in the district court, claiming *inter alia* that Mr. Wheelan failed to

investigate and raise issues in his state habeas corpus petition. This motion was denied by the Court on June 7, 2005.

On June 10, 2005 the 232nd District Court entered an order adopting the State's Proposed Findings of Fact and Conclusions of Law and recommended that habeas relief be denied.

On October 16, 2006 the Court of Criminal Appeals issued a *Per Curiam* Order adopting the recommendation of the District Court and denying the Petitioner relief. The Court further addressed the Petitioner's Motion to Amend Petition for State Habeas Corpus and found it to be subsequent application under Art. 11.071 and dismissed it for failing to meet one of the exceptions provided for in Section 5 of Art. 11.071.

As was noted above, this Court stayed the instant case to allow the Petitioner to exhaust his *Simmons* claim. The Petitioner filed his claim on May5, 2009 and the Court of Criminal Appeals granted the claim successor status on October 28, 2009.

The evidence the Petitioner presented to the trial court was that which was presented to this court in the earlier proceeding. Of particular significance were both the report of Norma Villanueva and the supporting affidavits provided by members of the Petitioner's family and others familiar with the death of his older brother, as well as the painstaking investigation Ms. Villanueva undertook to establish the validity of the Petitioner's birth certificate, which included an extensive search of birth records and

interviews of Nicaraguan government officials, as well as interviews with members and acquaintances of the Petitioner's family. Copies of Ms. Villanueva's affidavit, which explains the process of "rectification" and refutes the Respondent's allegation that the Petitioner's birth records were changed, and the affidavits she obtained from the Petitioner's family and acquaintances were placed in the record as attachments 1 through 8 of the Petitioner's Reply to the State's Answer, D.C. Doc. No. 31, and are incorporated herein by reference.

None of the documents filed as exhibits by the State in the district court addressed or otherwise dealt with the facts set forth in the affidavits filed by the Petitioner. Instead, the exhibits introduced by the State consisted of a concatenation of police and FBI reports containing inconsistent birth dates and snippets of testimony from the Petitioner's trial, none of which refute the authenticity of the official record of the Petitioner's birth.

The Petitioner has exhausted his *Simmons* claim in the state court system. Counsel for the Petitioner further incorporates Claims One through Four of the *pro se* Petition for Habeas Corpus, D.C. Doc. No. 1, as well as claims One though Nine of his Amended Petition for Habeas Corpus, D.C. Doc. No. 6, and his Reply and Exhibits, D.C. Doc. No. 31, to the State's Answer herein, and sets forth his claim for relief as follows:

### AMENDED CLAIM FOUR

**(Petitioner was a juvenile at the time of the offense)**

**A. Because the Petitioner was under eighteen years of age at the time he allegedly committed the offense of which he was convicted and sentenced to death, the imposition of the death sentence by the Texas court is a violation of the Petitioner's rights under the Eighth and Fourteenth Amendments of the United States Constitution.**

As charged in the indictment, the offense of which the Petitioner was convicted occurred on March 31, 1997, prior to the date the Petitioner turned eighteen years of age.

Because the Petitioner was less than eighteen years of age at the time he allegedly committed the subject offense, the imposition of the death penalty by the trial court constituted a violation of the Petitioner's rights under the Eighth and Fourteenth Amendments of the United States Constitution pursuant to the decision of the United States Supreme Court in *Roper v. Simmons, supra.*

Attached to the first Amended Petition, D.C. Doc. No. 6, as Exhibit "A" and by this reference made a part hereof is a copy of the Petitioner's official certificate of birth, indicating that at the time he committed the offense for which he was convicted and sentenced to death he was under the age of eighteen years and thus ineligible to be executed pursuant to the decision of the United States Supreme Court in *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183 (2005)

Also attached to the first Amended Petition as Exhibit "B" and by this reference made a part hereof are pages 191-193 of Volume 23 of the transcript of the punishment

phase of the Petitioner's trial. These pages contain sworn testimony of Lydia Tercero Hueto, the Petitioner's mother, in which she acknowledges that she is in fact the mother of the Petitioner and that the Petitioner's father was not her husband and was in fact married to another woman, thus precluding his name from being listed on the attached certificate of birth.

The Petitioner has further shown through the comprehensive investigation conducted by Norma Villanueva that the records of the Nicaraguan government show **<u>unaltered microfiche records of the births of two children named Bernardo Aban Tercero</u>**; the first in 1976, and more importantly the Petitioner, in 1979. *See* D.C. Doc. No. 31, Exhibit A at 3-7.

> **B. The decision of the State court denying the Petitioner's request for an evidentiary hearing and the subsequent denial of the Petitioner's *Simmons* claim resulted in an unreasonable determination of the facts in light of the substantial evidence produced by the Petitioner in the State court proceeding.**

As was noted above, notwithstanding the Petitioner's request for an evidentiary hearing, the district court instead ordered the parties to file proposed findings of fact and conclusions of law.

As was also noted above, the State court made no independent findings, but instead simply adopted the State's 7 page findings of fact and conclusions of law. The State's proposed findings did nothing to address or counter the substantial evidence

pertaining to the actual authenticity of he Petitioner's birth records as shown by Ms. Villanueva in her affidavit, nor did they address the veracity of the affidavits obtained by Ms. Villanueva during the course of her investigation.

Instead, the State's findings addressed solely alleged statements by the Petitioner and family members and law enforcement reports showing **inconsistent** dates of birth and did nothing to attempt to resolve the inconsistencies. The State offered no affidavits to support its allegation that the Petitioner's birth records were somehow altered, but simply produced an unsworn hearsay report by the U.S. Embassy fraud unit which contained neither the names of the person or persons conducting the investigation nor the names of the Nicaraguan officials interviewed.

It is therefore respectfully submitted that the paucity of admissible evidence produced by the State and adopted by the State court was a clearly unreasonable determination of the facts in light of the evidence produced by the Petitioner in the State court proceeding thus entitling the Petitioner to habeas relief pursuant to 28 U.S.C. §2254(d)(2).

Wherefore the Petitioner respectfully requests that the Court grant his Petition and issue a writ of habeas corpus mandating that Mr. Tercero receive a life sentence, or in the alternative, set this matter for an evidentiary hearing.

RESPECTFULLY SUBMITTED this 14th day of July, 2010.

/s/ _____
Donald Vernay
1604 Golf Course Road SE
Rio Rancho, NM 87124
(505) 892-2766
(505) 892-8119 (fax)
State Bar of Texas #24035581
minimal243@yahoo.com

/s/ _____
John E. Wright
P.O. Box 6547
Huntsville, TX 77342-6547
(936) 291-2211
(832) 201 0463
State Bar of Texas #22048500

COUNSEL FOR BERNARD ABAN TERCERO

CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing document was filed electronically and also was mailed to the Petitioner at the following address:

Bernardo Tercero, # 999369
Polunsky Unit
3872 Fm. 350 South
Livingston, TX 77351

/s/ _____
Donald Vernay